IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

LUIS VALLEJO,

Defendant.

8:13-CR-244

TENTATIVE FINDINGS

The Court has received the revised presentence investigation report (PSR) in this case. The defendant, Luis Vallejo, has objected to the PSR (filing 222) and moved for a downward departure. Filings 223 and 224. The Court has also considered a statement by Vallejo's counsel (filing 189) and a letter from Vallejo. Filing 242. The Court will consider the last two filings when weighing the § 3553(a) factors at sentencing, but neither requires any further action from the Court at this time.

IT IS ORDERED:

1.  The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005), and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a)  give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b)  resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

    (c)  impose upon the United States the burden of proof on all Guidelines enhancements;

    (d)  impose upon the defendant the burden of proof on all Guidelines mitigators;

(e)    depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

(f)    in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.    Vallejo objects (filing 222) to the PSR's inclusion of a two-level enhancement for possession of a firearm in connection with a drug offense. U.S.S.G. § 2D1.1(b)(1); PSR ¶¶ 34, 39, 47 & p. 22. On the day Vallejo was arrested, the police had gone to an apartment in Omaha to conduct a "knock and talk." One of Vallejo's co-conspirators, Luis Meza-Galvez, answered the door and allowed the police inside, whereupon they observed a large amount of cash on a table and a notebook that they believed to be a drug ledger. Meza-Galvez admitted that there were drugs in the apartment, but refused to consent to a search. Around that time, Vallejo arrived at the apartment and was detained. PSR ¶ 21. The police thereafter obtained a search warrant and discovered approximately 2,300 grams of actual methamphetamine in an air vent, and 87 grams of actual methamphetamine (along with $680, a digital scale, and plastic baggies) in a bedroom safe, as well as the $4,772 they had previously observed on the table. PSR ¶¶ 20–21, 34. In a bedroom of the apartment, they found a suitcase which contained $4,900 in cash and a hotel registration card in Vallejo's name. Finally, in the kitchen, the police discovered another digital scale, and inside a cupboard, a loaded handgun, along with 44 rounds of ammunition. PSR ¶ 34 & p. 22.

For § 2D1.1(b)(1) to apply, the government must prove by a preponderance of the evidence that (1) the weapon was possessed; and (2) it was not clearly improbable that the weapon was connected to the drug offense. *United States v. Garcia*, 703 F.3d 471, 476 (8th Cir. 2013). Actual or constructive possession will suffice. *United States v. Dunn*, 723 F.3d 919, 929 (8th Cir. 2013). So, the government must show that Vallejo exercised ownership, dominion, or control over either the firearm or the premises in which it was found. *Id.* "If possession is established, the enhancement applies 'if the weapon was present, unless it is clearly improbable that the weapon was connected with the

offense.'" *Id.* (quoting U.S.G. § 2D1.1(b)(1), cmt. n.11.A). The government proves a connection between the firearm and the offense by showing the existence of a temporal and spatial relation between the weapon, the drug trafficking activity, and the defendant. *United States v. Young*, 689 F.3d 941, 946 (8th Cir. 2012). Although the mere presence of a firearm is not enough, the government need not show that the defendant used or even touched the firearm. *Garcia*, 703 F.3d at 476.

There is no dispute that the government has demonstrated a connection between the firearm and the present drug conspiracy. The firearm was found in the same apartment where large amounts of cash and methamphetamine were being stashed. *See, e.g.*, *id.* at 477. And the firearm, which was loaded, was stored in a readily accessible location such that it could be used to protect that stash. *See Young*, 689 F.3d at 946. However, the government has, thus far, not established that Vallejo possessed the firearm. First, there is no evidence that Vallejo actually possessed the firearm, nor that he exerted dominion or control over it. The firearm was found in a kitchen cupboard, separate from Vallejo's few personal belongings, which were found in a bedroom. *Compare, e.g.*, *United States v. Payne*, 81 F.3d 759 (8th Cir. 1996). Nor is there any evidence that Vallejo knew the weapon was there. And as the Court explains below, Vallejo was not the sole occupant of the apartment.

The government has also, thus far, failed to establish constructive possession. Constructive possession of a firearm is shown when a person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself. *United States v. Chantharath*, 705 F.3d 295, 304 (8th Cir. 2013). While there is no evidence that Vallejo owned, controlled, or exercised dominion over the firearm itself, there is evidence that might support a finding that Vallejo had dominion or control over the apartment. Another alleged co-conspirator,[1] Jorge Munoz-Ramon, told police that he had rented the apartment at the request of Meza-Galvez, and that the apartment was intended for Vallejo's use. PSR ¶ 30. And Vallejo admitted that he had been staying at the apartment for approximately 8 to 10 days. PSR

---

[1] Munoz-Ramon has not yet proceeded to trial or pleaded guilty. That said, at Vallejo's trial the Court found (for purposes of Fed. R. Evid. 801(d)(2)(E)) that Munoz-Ramon was a member of the conspiracy.

¶ 33. Additionally, Vallejo was trusted to stay alone in the apartment with large amounts of methamphetamine and cash. Munoz-Ramon stated that shortly before the search of the apartment, he had stopped by to deliver $5,000 to Meza-Galvez. Meza-Galvez was not at the apartment, but Vallejo was, and so Munoz-Ramon had left the money with him. PSR ¶ 30.

But showing that Vallejo had some control over the apartment will not suffice to show constructive possession of the firearm, because Vallejo was neither the sole occupant of the apartment, nor the only person who had dominion or control over it. Meza-Galvez claimed that he had been staying at the apartment for the past 2 months, watching over the methamphetamine for Munoz-Ramon. PSR ¶ 32. And while there is no evidence that Munoz-Ramon resided at the apartment, he rented it and the lease was held in his name. PSR ¶¶ 30, 34.

Where there is joint occupancy of a residence, dominion over the premises by itself is insufficient to establish constructive possession. *United States v. Wright*, 739 F.3d 1160, 1168 (8th Cir. 2014). The firearm was in a kitchen cupboard—a location equally accessible to Vallejo and Meza-Galvez (and possibly Munoz-Ramon). This raises the inference that any one or all of the co-conspirators possessed the firearm. *United States v. Wajda*, 810 F.2d 754, 762 (8th Cir. 1987). In such cases, there must be some additional nexus linking the specific defendant to the firearm. *Wright*, 739 F.3d at 1168. On the current record, no such nexus has been established.

And there is another, more fundamental, obstacle, thus far, in proving constructive possession of the firearm. Constructive possession generally requires knowledge of an object, the ability to control it, and the intent to do so. *Chantharath*, 705 F.3d at 304. As noted above, there is no evidence, at this point, that Vallejo knew of the firearm.

Section 2D1.1(b)(1) may also apply based upon a co-conspirator's possession of a firearm. *United States v. Brewer*, 624 F.3d 900, 907–08 (8th Cir. 2010). But the government must establish that it was reasonably foreseeable to the defendant that the co-conspirator would have possessed a weapon. *Id.* And this can only be demonstrated by proof that the defendant knew or should have known "based on specific past experiences" with the co-conspirator that the co-conspirator possessed a gun in connection with their common drug offense. *United*

*States v. Lopez*, 384 F.3d 937, 944 (8th Cir. 2004). The Court may not infer a defendant's knowledge based solely on the general association of firearms with the drug trade. *Id.* "To hold otherwise would unfairly penalize defendants for conduct over which they have no control." *Id.* At this point, the government has presented no evidence that any particular conspirator possessed or used the firearm, nor pointed to any facts suggesting that Vallejo should have foreseen such possession. Thus, the Court's tentative finding is that the government has not established actual or constructive possession of the firearm, and that Vallejo's objection has merit.

Vallejo also moves for a departure under U.S.S.G. § 5K2.20, for "aberrant behavior" deviating from an otherwise law-abiding life. Filings 223 and 224. But Vallejo's request for departure runs into an immediate obstacle. A departure under § 5K2.20 is not available when the offense of conviction is a "serious drug trafficking offense," § 5K2.20(c)(3), which the notes to the guideline define as any controlled substances offense under title 21 (other than simple possession) which carries a mandatory minimum term of imprisonment of 5 years or more. § 5K2.20 cmt. n.1. Vallejo is facing a minimum of 10 years on both counts. Thus, the Court tentatively finds that Vallejo's motion for departure must be denied. That said, the Court will consider the gist of Vallejo's argument when weighing the § 3553(a) factors. And the Court will resolve that matter at sentencing.

Per the Court's previous Order on Sentencing Schedule, if either party intends to adduce evidence at the sentencing hearing in support of an objection to these tentative findings, that party shall make a written objection which includes a statement describing what evidence will be presented and how long such a hearing would take. Filing 185 at ¶ 8.

3.    Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4.    If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are

required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5.    Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6.    Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 24th day of April, 2014.

BY THE COURT:

John M. Gerrard
United States District Judge